IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KIJANA SOPPE (N/K/A KIJANA PROWANT)   '  <br>   '  <br>**Plaintiff,**   '  <br>   '  <br>V.   '  <br>   '  <br>UNITED STATES OF AMERICA   '  <br>   '  <br>**Defendant.**   '  | CIVIL ACTION NO. 5:20-cv-1161 |

**PLAINTIFF' ORIGINAL COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE:

NOW COMES KIJANA SOPPE (n/k/a KIJANA PROWANT), Plaintiff in the above-styled and numbered cause (hereinafter called "**Plaintiff**"), complaining of the UNITED STATES OF AMERICA, the Defendant herein, (hereinafter called **Defendant**"), and for cause of action, would respectfully show unto the Court the following:

**JURISDICTION**

1. The Court has jurisdiction over this action pursuant to U.S.C. §1346(b)(1) for the following reasons:

   a. This suit is brought pursuant to the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. §2671, *et al*. Plaintiff filed her claim for damages for the acts of negligence specified hereinbelow with the Joint Base San Antonio-Lackland on March 21, 2020, with receipt of said claim on March 23, 2020. As of the date of filing of this lawsuit, Plaintiff's claims have not been administratively denied.

b.      The amount in controversy exceeds the sum or value of $100,000.00, exclusive of interest, costs of Court, and attorneys' fees.

## VENUE

2.      Each of the relevant acts complained of occurred at the Army Air Force Exchange Service ("AAFES") at the Joint Base San Antonio-Lackland, Texas, located within the San Antonio Division of the United States District Court for the Western District of Texas.

## THE PLAINTIFF

3.      At the times material herein, Plaintiff was stationed and was residing in San Antonio (Bexar County), Texas.

## THE DEFENDANT

4.      Service of Citation is requested at this time, to be had upon the Defendant UNITED STATES OF AMERICA by serving its agent, Mr. John F. Bash, United States Attorney for the Western District of Texas, at his office located at 601 N.W. Loop 410, Suite 600, San Antonio (Bexar County), Texas 78216, and by sending a true and correct copy of the Complaint, via certified mail, return receipt requested, to The Honorable William Barr, Attorney General of the United States of America, Department of Justice, 10th & Constitution Avenue, N.W., Room B-112, Washington, D.C. 20530.   Service of Citation is requested at this time.

## FACTS

**A.  Plaintiff was Sexually Assaulted, on Two Separate Occasions, at the AAFES Shoppette**

5.      In of April 2018, Plaintiff Kijana Soppe (now known as Kijana Prowant) was serving proudly in the United States Air Force.  She was stationed at the 802nd Force Support

Squadron on JBSA-Lackland in San Antonio, Texas.  As of April 2018, she had served the Air Force and been stationed at Lackland for over two years.

6. During such time and until June 21, 2018, Plaintiff frequented the Shoppette at the BMT Mini Mall (hereinafter, "the Shoppette").  The Shoppette and the BMT Mini Mall are, and were at all times relevant herein, operated by the Army and Air Force Exchange Service (AAFES).  The Shoppette was roughly a two-minute walk from where Plaintiff worked.  She patronized the Shoppette several times a week since she was first stationed at Lackland.

7. Before April of 2018, Ms. Soppe came to know Anthony Sandoval because he worked at the Shoppette.  She was on friendly terms with him, but no more than friendly terms with him.  She was acquainted with him in no way other than as customer and employee of the Shoppette.

8. One morning in April of 2018, Ms. Soppe came to the Shoppette as a customer.  As she was checking out, Mr. Sandoval gave her a hug, put his arms under hers and intentionally placed his hands on her buttocks. Ms. Soppe responded immediately by pulling away and saying, "What the F…?"

9. The April 2018 incident was witnessed by at least one other employee, Mary Villarreal, a 35-year employee of AAFES.  She recalls that Mr. Sandoval hurried up to Ms. Soppe, patted her on the bottom, and tightly hugged her. She observed that Ms. Soppe did not hug back. She says Mr. Sandoval then walked away and Ms. Soppe did not look happy. Ms. Villarreal says she was shocked by Mr. Sandoval's actions, they did not appear to be an accident, and she found it offensive.

10. Immediately after the April 2018 incident, Ms. Soppe discussed what happened with Mary Villarreal, then immediately reported the event to a Shoppette manager.

11. After the April 2018 event, Ms. Soppe tried to avoid Mr. Sandoval when she returned to the Shoppette. But on June 21, 2018, Mr. Sandoval approached Ms. Soppe while she spoke with another employee she knew as Ms. Dolly. Mr. Sandoval tried to hug Ms. Soppe, then grabbed her chest and dragged his arm across it, and then grabbed Ms. Soppe's face and pulled it towards his in an effort to kiss her. He said as he did so, "*Da me un beso.*" ("Give me a kiss."), and he puckered his lips. Ms. Soppe pulled away and said to him something like "What the f… are you doing? *Te voy a matar.*" ("I'm going to kill you."). Mr. Sandoval let her go, walked away and waived his hand as she yelled at him.

12. The June 21, 2018 incident was captured on video. It was also witnessed by at least one employee, Ms. Dolly. In addition, Ms. Soppe's screams at Mr. Sandoval were heard by Mary Villarreal. Ms. Soppe came to Ms. Villarreal's register immediately after the incident and told Ms. Villarreal what happened. Ms. Villarreal observed that Ms. Soppe was upset. Ms. Soppe then checked out, asked for a manager and reported the incident to a manager.

13. On June 21, 2018, Ms. Soppe also reported the incident up her chain of command to her Master Sergeant Amanda Striplin. Ms. Soppe reported to Master Sergeant Striplin that she was groped, and that somebody had grabbed her face. Master Sergeant Striplin found Ms. Soppe to be emotionally distressed, fidgety, stepping back and forth, upset and crying quite often. Master Sergeant Striplin feared she could not safely leave Ms. Soppe by herself, and asked Ms. Soppe if she felt the need to harm herself. Master Sergeant Striplin took Ms. Soppe to the Air Force Office of Special Investigations, to a Sexual Assault Response Coordinator, and to a victim's advocate.

14. At no time did Ms. Soppe ever consent to or encourage Mr. Sandoval's offensive contact and sexual assault.

B. **Defendant Negligently Hired, Trained, Supervised, and Retained Anthony Sandoval**

15. Anthony Sandoval worked at the AAFES BMT Mini-Mall Shoppette for two to three years before April of 2018. Before his offensive contact and sexual assault on Kijana Soppe, Mr. Sandoval was known to fellow employees and AAFES management as prone to offensively contact and sexually assault female customers. Before April of 2018, customers had complained of offensive touching by Anthony Sandoval. Before April of 2018, employees witnessed Mr. Sandoval inappropriately touch female customers. Before April of 2018, Mr. Sandoval was repeatedly counseled for this behavior. As a result of this behavior, before April of 2018, Mr. Sandoval was given refresher sexual harassment training, in addition to the mandatory yearly sexual harassment training. Before April of 2018, when confronted about his behavior, Mr. Sandoval made comments to management that made it clear he was unable or unwilling to stop his behavior, such as "I'm a former Marine," and "I'm Puerto Rican. I love women." Before April of 2018, when flights of new female trainees came through the Shoppette, managers moved him to the stockroom because they knew he would be unable to keep himself from offensively contacting and sexually assaulting the female trainees.

16. In April through June of 2018, Ms. Soppe was aware of none of the above facts.

17. Defendant knew all of the above facts in April of 2018, yet Defendant allowed Mr. Sandoval on that day to approach, tightly hug and grope Plaintiff.

18. In April of 2018, Defendant learned, in addition to all of the above facts, that Anthony Sandoval made offensive contact with and sexually assaulted Plaintiff, that she found the

5

behavior offensive, and that Defendant's employee Mary Villarreal witnessed the event and found it shocking and offensive to her as well.

19. Defendant knew all of the above facts on June 21, 2018, yet Defendant again allowed Mr. Sandoval on that day to approach the Plaintiff, grope her, and forcibly attempt to kiss her.

## **NEGLIGENCE OF DEFENDANT**

20. Defendant was negligent in the hiring, supervision, training, and retention of Anthony Sandoval.

21. Defendant's agents, servants and employees, who were at all times acting in the course and scope of their employment, were guilty of negligence toward Plaintiff. Defendant is liable for the negligent acts of their agents, servants, or employees, including all managers and supervisors, under the legal doctrine of respondeat superior. At all relevant times Defendant managers and supervisors of the Shoppette were agents, or apparent or ostensible agents, of Defendant. Defendant's negligence was a proximate cause of the offensive contact and sexual assault suffered by Plaintiff.

22. Specifically, Defendant:

   a. Created a condition that posed an unreasonable risk of harm to individuals such as Plaintiff;

   b. Failed to make safe a condition on Defendant's premises which Defendant knew, or in the exercise of ordinary care should have known, posed an unreasonable risk of harm to individuals such as Plaintiff;

   c. Failed to warn customers including Plaintiff of a condition on Defendant's premises which Defendant knew, or in the exercise of ordinary care should have known, posed an unreasonable risk of harm to individuals such as Plaintiff;

      d. Negligently trained Anthony Sandoval by providing him with counseling and sexual harassment training that failed to assure he would not repeat his offense contact and sexual assaults on women;

      e. Negligently failed to train supervisors, management and staff to report, document and keep safe all complaints of employee offensive contact and sexual assault;

      f. Negligently supervised Anthony Sandoval by not keeping him away from Plaintiff and other female customers and employees before his first offensive contact and sexual assault upon her in April of 2018;

      g. Negligently supervised Anthony Sandoval by not firing him and/or keeping him away from Plaintiff and other female customers and employees before his second offensive contact with her and sexual assault upon her in June of 2018;

      h. Negligently supervised Anthony Sandoval by allowing him to be in close contact with women after he was known to have inappropriately touched women;

      i. Negligently supervised Anthony Sandoval by allowing him to be in close contact with women after he expressed to managers his inability or unwillingness to stop sexually assaulting women;

      j. Negligently failed to report, investigate and document all of Anthony Sandoval's inappropriate behavior with women;

      k. Negligently failed to keep a complete employee file on Anthony Sandoval and/or complete customer and employee complaint file to include all complaints of Anthony Sandoval's offensive contact and sexual assaults;

      l. Negligently assessed the risk Anthony Sandoval presented to female customers and employees;

      m. Negligently retained Anthony Sandoval after he repeatedly made offensive contact with female customers and employees;

      n. Negligently retained Anthony Sandoval after he continued offensive contact and sexual assaults on female customers and employees despite counseling and sexual assault sensitivity training;

      o. Negligently retained Anthony Sandoval after he continued offensive contact and sexual assaults on female customers and employees despite being moved to the stockroom;

      p. Negligently retained Anthony Sandoval after he expressed to managers his inability or unwillingness to stop sexually assaulting women;

      q. Negligently failed to create and/or enforce safety policies to protect customers and employees from offensive contact and sexual assault.

## **DAMAGES**

23. Plaintiff would show that as a direct and proximate result of the negligence on the part of the agents, servants, and/or employees of Defendant, Plaintiff has been caused to suffer humiliation, physical pain and mental anguish, and in reasonable probability, she will continue to suffer the same in the future, for which she seeks recovery herein.

24. Further, Plaintiff has been caused to suffer physical impairment, and in reasonable probability, she will continue to suffer the same in the future, for which she seeks recovery herein.

25. Further, Plaintiff has been caused to suffer lost wages and lost earning capacity, for which she seeks recovery herein.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant, the UNITED STATES OF AMERICA, be duly cited to appear and answer herein, and that upon final hearing, Plaintiff have and recover judgment of and from the Defendant, UNITED STATES OF AMERICA, in an amount within the jurisdictional limits of this Court, post-judgment interest, costs of Court, and for such other and further relief, both general and special, at law or in equity, to which the Plaintiff may show herself to be justly entitled.

Dated:           September 30, 2020

Respectfully submitted,

LYONS & LYONS, P.C.
237 W Travis St., Suite 100
San Antonio, Texas 78205
Telephone:     (210) 225-5251
Telefax:           (210) 225-6545

By:     **/s/ *Sean Lyons*** 
        Sean Lyons
        State Bar No. 00792280
        Sean@lyonsandlyons.com
        Clem Lyons
        State Bar No. 12742000
        Melinda@lyonsandlyons.com
        *ATTORNEYS FOR PLAINTIFF*